```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION


Admiral Theatre, Inc.,              )
                                    )
        Plaintiff,                  )
                                    )
                                    )
                                    )
     v.                             )   No. 20-cv-4429
                                    )
                                    )
Cook County Department of           )
Revenue and City of Chicago         )
Department of Finance,              )
                                    )
        Defendants.
```

<u>Memorandum Opinion and Order</u>

Plaintiff Admiral Theatre, Inc. ("Admiral") operates a "gentlemen's club" in Chicago that features live exotic dance performances. As a Chicago entertainment venue, Admiral is subject to amusement taxes imposed by both the city of Chicago and by Cook County. The city and the county exempt a number of venues and businesses from the amusement tax, including smaller venues that offer live theatrical performances, but explicitly do not exempt adult-entertainment facilities such as Admiral. In the instant action, Admiral asserts that the city and county amusement tax schemes violate the First Amendment of the United States Constitution and the free-speech protections of the Illinois Constitution because the exemptions are not content- or viewpoint-neutral. Defendants Cook County Department of Revenue and City of

Chicago Department of Finance have moved to dismiss the action. For the reasons that follow, the motions to dismiss [16, 20] are granted.

I.

Under Section 4-156-020(A) of the Municipal Code of Chicago, the city of Chicago imposes an "amusement tax . . . upon the patrons of every amusement within the City." An "amusement" is defined broadly as, inter alia, "any exhibition, performance, presentation or show for entertainment purposes." Mun. Code of Chi. § 4-156-010. The tax rate is set at "nine percent of the admission fees or other charges paid for the privilege to enter, to witness, to view or to participate in such amusement." *Id.* § 4-156-020(A).

The Municipal Code of Chicago exempts several types of events from the amusement tax. Relevant here, it exempts "the admission fees to witness in person live theatrical, live musical or other live cultural performances that take place in any auditorium, theater or other space in the city whose maximum capacity . . . is not more than 1500 persons." *Id.* § 4-156-020(D)(1). A "live theatrical, live musical or other live cultural performance" is defined as "a live performance in any of the disciplines which are commonly regarded as part of the fine arts" and explicitly "does not include such amusements as . . . performances conducted at adult entertainment cabarets." *Id.* § 4-156-010.

Cook County, for its part, imposes a substantially similar tax on amusements taking place within the county, except that it imposes a tax rate of 3% rather than 9%. *See* Cook Cnty., Ill. Code of Ordinances § 74-392(a). It exempts from the amusement tax "in person, live theatrical, live musical or other live cultural performances that take place in any auditorium, theater or other space in the County, whose maximum capacity . . . is not more than 750 persons," where the performances in question are defined to exclude "performances conducted at adult entertainment cabarets." *Id.* §§ 74-391, 74-392(d)(1).

The Admiral Theater, an adult cabaret located in Chicago, is subject to both the Chicago and Cook County amusement taxes. Although it is a small venue—it can hold no more than 250 patrons—it is not subject to the exemptions for small "live theatrical . . . performances" because both the city and the county have excluded adult-entertainment cabarets such as Admiral.

Recently, both Chicago and Cook County audited Admiral's amusement-tax payments. ECF No. 1 ¶ 25. Interpreting certain categories of Admiral's proceeds as subject to the amusement tax over and above what Admiral had been paying, the city and county assessed more than $3 million in amusement taxes. *Id.*

Admiral now brings the instant action asserting that the city and county tax schemes violate the First Amendment and the analogous provisions of the Illinois Constitution. Admiral seeks

3

three forms of relief: (1) a declaratory judgment that the tax schemes are unconstitutional, (2) an injunction preventing the city and county "from enforcing their respective amusement tax ordinances against . . . Admiral," and (3) "the refund of monies paid by . . . Admiral . . . under the[] . . . amusement tax ordinances." *Id.* at 11-12.

## II.

Defendants argue initially that Admiral's claims are barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA divests district courts of subject-matter jurisdiction "if the relief sought would diminish or encumber state tax revenue," and precludes federal plaintiffs from "seeking not only injunctive but also declaratory relief from state taxes." *Scott Air Force Base Props. v. Cnty. of St. Clair*, 548 F.3d 516, 520 (7th Cir. 2008).[1] "[T]he TIA's ambit is not confined by the law under which a state tax is challenged, for even federal constitutional claims do not render the Act inapplicable." *Id.*

---

[1] "The Tax Injunction Act does not bar federal monetary relief." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 735 (7th Cir. 2011). Accordingly, the TIA does not bear on Admiral's claims for damages.

4

As its plain language makes clear, the TIA's jurisdictional bar "is conditioned upon the availability of a 'plain, speedy and efficient remedy' in state court." *Id.* at 521 (citing *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982)). A "plain, speedy and efficient" remedy is one that meets "certain minimal *procedural* criteria"; that is, it must "provide[] the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *Grace Brethren Church*, 457 U.S. at 411 (emphasis in original). "A plaintiff who seeks to surmount the jurisdictional bar of the TIA bears the burden of demonstrating the insufficiency of the remedy available in the state court system." *Scott*, 548 F.3d at 521.

Admiral does not argue that it does not have a plain, speedy and efficient remedy in the state courts.[2] Instead, it argues that the TIA bar is not triggered here under *Hibbs v. Winn*, 542 U.S. 88 (2004). In *Hibbs*, Arizona taxpayers mounted an Establishment-Clause challenge to an income-tax credit. 542 U.S. at 94-95. The credit was afforded to citizens who made payments to non-profit

---

[2] Defendants contend, and Admiral does not refute, that Admiral has an avenue for state-court review of its constitutional claims through the Administrative Review Law, 735 Ill. Comp. Stat. § 5/3-104, which provides that the Illinois Circuit Courts have jurisdiction to hear appeals of final administrative decisions. Admiral, Defendants argue, is empowered to seek administrative review of the tax assessment at issue, and then assert its constitutional arguments on appeal in state court. Indeed, it appears that Admiral has already availed itself of this remedy. *See* ECF No. 29-1 at 2; ECF No. 21 at 14.

organizations that were authorized to give money to religious private schools. *Id.* The taxpayer plaintiffs had not, themselves, taken advantage of the income-tax credit; accordingly, their own tax liability was not at issue. The Court held that the TIA did not apply. *Id.* at 94. It determined that "Congress wrote the [TIA] to address" only "cases in which state taxpayers seek federal-court orders enabling them to avoid paying taxes." *Id.* at 107. Because invalidating the tax credit would tend to increase, rather than diminish, state tax revenue, and further because the plaintiffs were third parties not seeking to avoid paying any personal taxes, the Court determined that the TIA did not present a jurisdictional bar. *Id.*

Admiral argues that, just like in *Hibbs*, the instant lawsuit "focuses not on the imposition of the tax on [Admiral], but the removal of tax liability for [favored artistic venues] and the resulting unconstitutionality of the tax scheme as a whole." ECF No. 25 at 4. In other words, Admiral suggests that it is focused not on reducing tax liability for itself, but on increasing tax liability for those that qualify for the amusement tax exemptions. But that is belied by Admiral's complaint. Admiral explicitly seeks to "enjoin [Defendants] from enforcing their respective amusement tax ordinances *against Admiral Theatre*." ECF No. 1 at 11 ¶ 2 (emphasis added). Similarly, it seeks "declaratory . . . relief *against the enforcement* of the . . . amusement tax

6

ordinances." *Id.* at 11 ¶ 34 (emphasis added). Unlike the plaintiffs in *Hibbs*, Admiral seeks a federal court order that would reduce its own tax liability and deplete the state's coffers—precisely what the TIA was intended to prohibit. Accordingly, I conclude that Admiral's claims for declaratory and injunctive relief are barred by the TIA.

### III.

Even if, contrary to the language in the complaint, Admiral truly seeks to increase the tax liability of competing venues rather than decrease liability for itself, Admiral's declaratory and injunctive claims, together with its damages claims, are barred by the comity doctrine. "Out of respect for state functions, the comity doctrine 'restrains federal courts from entertaining claims for relief that risk disrupting state tax administration.'" *Perry v. Coles Cnty.*, 906 F.3d 583, 587 (7th Cir. 2018) (citing *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417 (2010)). In particular, "the comity doctrine bars taxpayers from asserting § 1983 claims against 'the validity of state tax systems' via federal lawsuits." *Id.* (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981)). Instead, taxpayers seeking such relief must "seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and

7

complete."[3] *Fair Assessment*, 454 U.S. at 116. The comity doctrine was partially codified by the TIA, but "the comity doctrine is more embracive." *Levin*, 560 U.S. at 424.

Admiral argues that the principles of comity do not apply here, pointing to language in *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). Specifically, Admiral argues that the *Levin* court "limited the application of the comity doctrine" to exclude cases such as this one (1) that trigger heightened judicial scrutiny and (2) where the state court has already ruled on the constitutional questions. ECF No. 25 at 5. I disagree that *Levin* precludes application of the comity doctrine here.

In *Levin*, independent marketers ("IMs") of natural gas challenged under the Commerce and Equal Protection Clauses an Ohio tax scheme that afforded competing local distribution companies ("LDCs") certain tax exemptions that the IMs did not receive. *Levin*, 560 U.S. at 418. The IMs sought declaratory and injunctive relief invalidating the tax exemptions with the purported aim of increasing tax liability for the LDCs, rather than decreasing tax liability for themselves. *Id.* at 419. The Court, looking to several factors, held that the comity doctrine blocked the suit. *Id.* at 431. First, the plaintiffs sought "federal-court review of

---

[3] The "plain, adequate, and complete" standard has been interpreted identically to the TIA's "plain, speedy and efficient" test. *See Fair Assessment*, 454 U.S. at 116 n.8; *Capra v. Cook Cnty. Bd. of Review*, 733 F.3d 705, 714 (7th Cir. 2013).

8

commercial matters over which Ohio enjoys wide regulatory latitude; their suit d[id] not involve any fundamental right or classification that attracts heightened judicial scrutiny." *Id.* Second, the Court found that although the plaintiffs held themselves out as third-party challengers to the tax scheme, they were "in fact seeking federal-court aid in an endeavor to improve their competitive position." *Id.* Third, the court found that Ohio courts would be "better positioned" to correct any constitutional violations "because they are more familiar with state legislative preferences and because the TIA does not restrain their remedial options." *Id.* at 431-32. With regard to this last factor, the Court explained that if the plaintiffs were to prevail on their suit, there were two ways to achieve parity between IMs and LDCs—first, a court could reduce the IM plaintiffs' tax liability. *Id.* at 429. But that solution would run afoul of the TIA, which stands in the way of a decree that would "enjoin . . . collection of [a] tax under State law." *Id.* (citing 28 U.S.C. § 1341). The other avenue would be to "reshape the relevant provisions of Ohio's tax code" to remove the exemptions for LDCs, but that would be "the very interference in state taxation the comity doctrine aims to avoid." *Id.* Accordingly, the Court determined, the Ohio state courts were in the best position to resolve the action.

9

For each the reasons articulated in *Levin*, comity considerations justify dismissal of the instant suit. Although Admiral has suggested that it aims not to decrease its own tax liability but to increase the liability for other venues subject to the exemptions, for the same reasons enunciated by the Court in *Levin*, that is a distinction without a difference; Admiral is "in fact seeking federal-court aid in an endeavor to improve [its] competitive position." *Id.* at 431. And just like in *Levin*, Admiral's relief could involve either invalidating the exemptions or reducing tax liability for Admiral, and the Illinois courts are better positioned to choose between those two options.

Admiral argues that unlike the plaintiffs in *Levin*, its First-Amendment claims trigger heightened judicial scrutiny. I disagree. A grant of a tax exemption "has much the same effect as a cash grant" or subsidy, and "a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 544, 549 (1997). "Defendants have chosen to . . . subsidiz[e] live fine arts performances in small venues, and they are entitled to define the parameters of that program in a way that will accomplish their goals." *Pooh-Bah Enters., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 802 (Ill. 2009) (upholding the tax scheme at issue here over First-Amendment challenge); *see also Davenport v. Wash. Educ. Ass'n*, 551

10

U.S. 177, 188-89 (2007) ("[I]t is well established that the government can make content-based distinctions when it subsidizes speech."). Accordingly, as in *Levin*, the claims at issue do not trigger heightened judicial scrutiny.

Admiral also argues that there is no need to defer to the state courts because the Illinois Supreme Court has already considered a First-Amendment challenge to the tax provisions at issue here and declined to disturb the scheme. *See Pooh-Bah*, 905 N.E.2d at 805. But Admiral misunderstands comity's purpose. The comity doctrine "reflects the reluctance of federal courts to 'interfere by injunction with [states'] fiscal operations' and the concomitant desire to show 'scrupulous regard for the rightful independence of state governments.'" *Perry*, 906 F.3d at 587-88 (citing *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932)). If I allowed the case to continue, I would risk "interfer[ing] . . . with [Illinois's] fiscal operations" irrespective of whether the Illinois courts had already weighed in. *See Z & R Cab, LLC v. Phila. Parking Auth.*, 616 F. App'x 527, 531 (3d Cir. 2015) (remanding to determine whether principles of comity barred § 1983 action despite prior state-court decision declaring law at issue unconstitutional). Admiral also suggests that the Illinois decision would render a state-court action "futile," but the comity doctrine requires only that "state courts are available to receive arguments and resolve disputes; that the federal plaintiff likely

11

would lose on the merits is neither here nor there." *See SGB Fin. Servs., Inc. v. Consol. Indianapolis-Marion Cnty.*, 235 F.3d 1036, 1039 (7th Cir. 2000) (discussing analogous TIA context). Accordingly, I conclude that the comity doctrine bars the instant suit.

For the foregoing reasons, the motions to dismiss [16, 20] are granted.

        **ENTER ORDER:**

        **Elaine E. Bucklo**
        United States District Judge

Dated: April 15, 2021